UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

RONALD TARINO DYSON,

        Petitioner,                    Case No. 1:15-cv-535

v.                                         Honorable Janet T. Neff

SHERRY BURT,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). The Court may *sua sponte* dismiss a habeas action as time-barred under 28 U.S.C. § 2244(d). *Day v. McDonough,* 547 U.S. 198, 209 (2006). After undertaking the review required by Rule 4, I conclude that the petition is barred by the one-year statute of limitations.

**Discussion**

I.  Factual Allegations

Petitioner Ronald Tarino Dyson is incarcerated at the Muskegon Correctional Facility. Following a bench trial in the Kalamazoo County Circuit Court, Petitioner was convicted of first-degree premeditated murder, MICH. COMP. LAWS § 750.316(1)(a). On December 12, 1994, he was sentenced to life imprisonment without parole.

Petitioner appealed his conviction to the Michigan Court of Appeals, raising two issues: (1) the judge failed to recuse himself, after being informed that Petitioner's co-defendant passed a polygraph test; and (2) the trial judge failed to find sufficient facts to support the evidence. In an unpublished opinion issued on May 23, 1997, the court of appeals affirmed the conviction. Petitioner sought leave to appeal to the Michigan Supreme Court, which denied leave to appeal on April 2, 1998.

Petitioner filed a motion for relief from judgment on July 1, 2010 in the Kalamazoo County Circuit Court. In that motion, Petitioner raised the following issues: (1) retroactive change in the law; (2) inadmissible polygraph evidence; (3) ineffective assistance of trial counsel; and (4) ineffective assistance of appellate counsel. The trial court denied the motion on July 14, 2010, for failure to meet the burden of establishing entitlement to relief under MICH. CT. R. 6.508(D)(3). Petitioner sought leave to appeal to the Michigan Court of Appeals and Michigan Supreme Court, which denied leave to appeal on August 25, 2010 and February 6, 2011, respectively.

On March 31, 2014, Petitioner filed a successive motion for relief from judgment under MICH. CT. R. 6.502(G)(2), raising four claims: (1) the prosecutor knowingly used perjured testimony; (2) inadmissible polygraph test; (3) ineffective assistance of trial counsel; and

(4) ineffective assistance of appellate counsel. With respect to his first claim, Petitioner contended that the prosecutor had suborned perjury from Kawaan Rice, against whom Petitioner had declined to testify at a preliminary hearing, at a time when Rice was charged in the murder for which Petitioner ultimately was convicted. In support of his motion, Petitioner submitted a one-page affidavit from William Harris, notarized on December 3, 2012 or December 3, 2013.[1] In the affidavit, Harris stated that, on November 5, 1993, he had a conversation with Kamed Kawaan Rice, in which Rice stated, "The problem that I had with the guy from Detroit was taken care of, and I don't have to pay that debt anymore because I shot him last night." (Ex. to Pet., docket #1, Page ID#53.) Harris further avers that he did not come forward with his testimony earlier, because he had been under the impression that the right person had been taken into custody, and he did not learn otherwise until he saw Petitioner at the Muskegon Correctional Facility. (*Id.*)

In an opinion issued on May 5, 2014, the trial court held that Petitioner's claim of newly discovered evidence failed to meet the exception permitting a successive motion for relief from judgment under MICH. CT. R. 6.502(G)(2). (*See* 5/5/14 Cir. Ct. Ord., docket #1, Page ID##45-49.) The court held that, even assuming that the affidavit was sufficiently relevant to entitle Petitioner to file a successive motion, Petitioner knew Harris and had failed to show diligence in discovering the evidence. (*Id.* at 49.) In addition, the court held that Petitioner failed also to demonstrate that "'but for' the lack of presentation of Harris's testimony, Defendant would have had a 'reasonably likely chance of acquittal.'" (*Id.* at 50 (quoting MICH. CT. R. 6.508(D)(3)(b)(I)).) The

---

[1] A copy of the affidavit is attached as an exhibit to the original petition. (Ex. to Pet., docket #1, Page ID#53.) Harris did not date the affidavit. The notary stated the date, but the bottom portion of the last numeral of the date is cut off on the copy provided to the Court. It appears to be a "2," but it arguably may be a "3." (*Id.*)

court dismissed the remaining issues without discussion, as a motion containing only those issues would have been dismissed under the rule without discussion. (*Id.* at 50.)

Petitioner sought leave to appeal to the Michigan Court of Appeals, raising the same four issues. On July 31, 2014, the court of appeals denied leave to appeal under MICH. CT. R. 6.502(G), because Petitioner failed to meet one of the exceptions to the general rule that a movant may not appeal the denial of a successive motion for relief from judgment. Petitioner thereafter sought leave to appeal to the Michigan Supreme Court on the same bases, and the court denied leave to appeal on March 31, 2015.

Petitioner filed his habeas application on or about May 13, 2015.[2]

II.     Statute of Limitations

Petitioner's application is barred by the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1), which became effective on April 24, 1996, as part of the Antiterrorism and Effective Death Penalty Act, PUB. L. NO. 104-132, 110 STAT. 1214 (AEDPA). Section 2244(d)(1) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

---

[2]Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner dated his application on May 13, 2015, and it was received by the Court on May 18, 2015. Thus, it must have been handed to prison officials for mailing at some time between May 13 and 18, 2015. For purposes of this Report and Recommendation, I have given Petitioner the benefit of the earliest possible filing date. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). The running of the statute of limitations is tolled when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *see also Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) (limiting the tolling provision to only State, and not Federal, processes); *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (defining "properly filed").

### A.     Section 2244(d)(1)(A)

In most cases, § 2244(d)(1)(A) provides the operative date from which the one-year limitations period is measured. Under that provision, the one-year limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). According to paragraph nine of Petitioner's amended habeas application, Petitioner appealed his conviction to the Michigan Court of Appeals and the Michigan Supreme Court. The Michigan Supreme Court denied his application on April 2, 1998. Petitioner did not petition for certiorari to the United States Supreme Court. The one-year limitations period, however, did not begin to run until the ninety-day period in which Petitioner could have sought review in the United States Supreme Court had expired. *See Lawrence*

*v. Florida*, 549 U.S. 327, 332-33 (2007); *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000). The ninety-day period expired on July 2, 1998.[3]

Under § 2244(d)(1)(A), therefore, Petitioner had one year from July 2, 1998, or until July 2, 1999, in which to file his habeas application. Petitioner filed on May 13, 2015. Obviously, he filed more than one year after the time for direct review expired. Thus, absent tolling, his application is time-barred as measured from the date on which his convicion became final.

Although 28 U.S.C. § 2244(d)(2) provides that the one-year statute of limitations is tolled while a duly filed petition for state collateral review is pending, the tolling provision does not "revive" the limitations period (i.e., restart the clock); it can only serve to pause a clock that has not yet fully run. *Payton v. Brigano*, 256 F.3d 405, 408 (6th Cir. 2001). Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations. *Id.*; *McClendon v. Sherman*, 329 F.3d 490, 493 (6th Cir. 2003). Even where the post-conviction motion raises a claim of ineffective assistance of appellate counsel, the filing of the motion for relief from judgment does not revive the statute of limitations. *See Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004) (citing *McClendon*, 329 F.3d at 490). Because Petitioner's one-year period expired in 1999, his collateral motions filed in 2010 and 2014 did not serve to revive the limitations period.

---

[3]Petitioner argues that, because his date of conviction, December 13, 1994, occurred prior to enactment of the AEDPA, he is not bound by the limitations period established by the AEDPA. Petitioner's argument is frivolous. By its express terms, the statutory period of limitations applies to all "judgment[s that] became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). As discussed, Petitioner's judgment did not become final until April 2, 1998, nearly two years after the effective date of the AEDPA on April 24, 1996. Further, the courts have never held that prisoners whose cases became final before the effective date of the AEDPA were exempt from the statute of limitations. Instead, because enactment of the statute could extinguish otherwise viable claims, the Sixth Circuit held that there was a one-year grace period from enactment of the statute for such prisoners to file their petitions. *Austin v. Mitchell*, 200 F.3d 391, 393 (6th Cir. 1999). That grace period ended on April 24, 1997. *Bronaugh v. Ohio*, 235 F.3d 280, 284-85 (6th Cir. 2000). As a result, had Petitioner's conviction been final prior the effective date of the statute, he would only have had until April 24, 1997, in which to file his petition.

The one-year limitations period applicable to § 2254 is a statute of limitations subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010); *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009); *Keenan v. Bagley*, 400 F.3d 417, 420 (6th Cir. 2005). A petitioner bears the burden of showing that he is entitled to equitable tolling. *See Keenan*, 400 F.3d at 420; *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). The Sixth Circuit repeatedly has cautioned that equitable tolling should be applied "sparingly" by this Court. *See, e.g., Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011); *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010); *Sherwood v. Prelesnik*, 579 F.3d 581, 588 (6th Cir. 2009). A petitioner seeking equitable tolling of the habeas statute of limitations has the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Holland*, 560 U.S. at 649 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Lawrence*, 549 U.S. at 335; *Hall*, 662 F.3d at 750; *Akrawi*, 572 F.3d at 260. In order to rise to the level of an extraordinary circumstance that would support equitable tolling, "a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Hall v. Warden, Labanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011).

Petitioner suggests that he is entitled to equitable tolling because he did not learn of Harris's evidence until an unspecified date prior to the filing of his second motion for relief from judgment on March 31, 2014. The sole habeas ground that is dependent in any way on Harris' affidavit is Petitioner's claim that the prosecutor suborned perjury by introducing Rice's testimony that Petitioner was the shooter, rather than Rice himself, as Petitioner had previously informed the police. Harris's evidence is irrelevant to Petitioner's remaining claims.

Petitioner cannot demonstrate that the late discovery of Harris's information amounted to an extraordinary circumstance that stood in the way of raising the claim. Even if the Court were to assume that Harris's failure to disclose his evidence was outside of Petitioner's control, Petitioner's claim that the prosecutor suborned perjury does not rest on Harris's evidence. Instead, the claim rests almost entirely on facts known to Petitioner at the time of his trial: that Rice was initially identified as the shooter, was originally charged with the shooting, and was ultimately indicted by a grand jury; that Annette Gardner knew Rice, saw the shooting, and identified Rice as the shooter; that Rice's testimony against Petitioner was similar to the statement Petitioner originally made against Rice; and that, after Petitioner refused to testify against Rice at the preliminary examination, the prosecutor allegedly told Petitioner, "I will be seeing you again for wasting my time." (Br. in Supp. of Pet., docket #1, Page ID##22-23.)

Moreover, other evidence at trial included the testimony of one witness to the effect that Petitioner had asked him to "stank" the victim about a week before the murder. Two other witnesses testified that Petitioner had told them that he had killed the victim. (*Id.* at 18-20.) Even assuming that Harris's statement refers to the murder in question, it serves only as a minor challenge to Rice's credibility. It offers no additional support to Petitioner's claim that the prosecutor knowingly introduced Rice's false testimony. In addition, Harris's statement is suspect on its face. The statement is vague, in that it is not obvious that Rice was talking about the murder for which Petitioner was convicted. In addition, it defies reason to believe that Harris would be able to identify the exact date of Rice's admission after nearly 20 years.

Under all of these circumstances, Petitioner cannot demonstrate that an extraordinary circumstance stood in the way of his raising his claim of prosecutorial misconduct. For many of the

same reasons, Petitioner cannot demonstrate that he pursued his rights diligently. Petitioner easily could have raised his claim of prosecutorial misconduct on direct appeal. Even though he did not have Harris's corroboration for his claim that Rice lied, Petitioner was well aware of whether Rice was lying. In addition, all of the reasons why Petitioner believed that the prosecutor was involved in Rice's lie were known to Petitioner at the time of trial.

Moreover, Petitioner has failed to allege facts suggesting that he acted diligently after learning of Harris's statement. At no place in his petition does Petitioner state the date on which he learned that Harris had heard Rice confess to the crime, nor does he suggest that Harris immediately signed his affidavit. In addition, the affidavit contains a date that is not fully legible. It is not at all apparent that Petitioner filed his habeas petition within one year of learning the new information. For all these reasons, Petitioner fails to meet his burden of demonstrating diligence in bringing his claim.

In sum, Petitioner fails to meet either prong of the test set forth in *Holland*, 560 U.S. at 649. He therefore fails to demonstrate entitlement to equitable tolling of the statute of limitations.

In *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931-32 (2013), the Supreme Court held that a habeas petitioner who can show actual innocence under the rigorous standard of *Schlup v. Delo*, 513 U.S. 298 (1995), is excused from the procedural bar of the statute of limitations under the miscarriage-of-justice exception. In order to make a showing of actual innocence under *Schlup*, a Petitioner must present new evidence showing that "'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *McQuiggin*, 133 S. Ct. at 1935 (quoting *Schlup*, 513 U.S. at 329 (addressing actual innocence as an exception to procedural default)). Because actual innocence provides an exception to the statute of limitations rather than a basis for equitable tolling,

a petitioner who can make a showing of actual innocence need not demonstrate reasonable diligence in bringing his claim, though a court may consider the timing of the claim in determining the credibility of the evidence of actual innocence. *Id.* at 1936.

In the instant case, Petitioner claims that he is actually innocent, and he proffers Harris's affidavit as evidence of his innocence. Even if Harris's affidavit is "new" evidence, it falls far short of demonstrating that, had the evidence been introduced at trial, it is more likely than not that no reasonable jury would have convicted Petitioner. *See id.* Instead, the evidence would have served only to challenge Rice's credibility to some extent. As I previously noted, Petitioner acknowledges in his brief that, in addition to Rice, two witnesses testified to Petitioner's own admission of responsibility for the murder and one witness testified that Petitioner had attempted to solicit the murder. Harris's statement has no impact on the evidence given by witnesses other than Rice. Under these circumstances, Petitioner fails to demonstrate that he is actually innocent. He therefore is not excused from the statute of limitations under 28 U.S.C. § 2244(d)(1), and his habeas petition is time-barred, when analyzed under § 2244(d)(1)(A).

### B. Section 2244(d)(1)(D)

Petitioner's habeas application also is time-barred when analyzed under § 2244(d)(1)(D). That section provides that the period of limitations runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *Id.* Under § 2244(d)(1)(D), the time under the limitations period begins to run is when a petitioner knows, or through due diligence, could have discovered, the important facts for his claims, not when the petitioner recognizes the legal significance of the facts. *See Redmond v. Jackson*, 295 F. Supp. 2d 767, 771 (E.D. Mich. 2003) (citing *Owens v. Boyd*, 235 F.3d

356, 359 (7th Cir. 2000)). Section 2244(d)(1)(D) "does not convey a statutory right to an extended delay while a petitioner gathers every possible scrap of evidence that might support his claim." *Id.* (quoting *Sorce v. Artuz*, 73 F. Supp. 2d 292, 294-95 (E.D.N.Y. 1999)). "Rather, it is the actual or putative knowledge of the pertinent facts of a claim that starts the clock running on the date on which the factual predicate of the claim could have been discovered through due diligence, and the running of the limitations period does not await the collection of evidence which supports the facts, including supporting affidavits." *Id.* (citing *Tate v. Pierson*, 177 F. Supp. 2d 792, 800 (N.D. Ill. 2001), and *Flanagan v. Johnson*, 154 F.3d 196, 198-99 (5th Cir. 1998)). Furthermore, a habeas petitioner has the burden of proof in establishing that he exercised due diligence in searching for the factual predicate of the habeas claims. *Stokes v. Leonard*, 36 F. App'x. 801, 804 (6th Cir. 2002).

As I previously indicated, Harris's affidavit does not form the factual predicate for Petitioner's claim that the prosecutor committed misconduct by suborning perjury. Instead, Harris's evidence simply adds an additional fact that might cast doubt on the credibility of Rice's testimony. It does not prove that Rice's testimony was false. More importantly, it does not in any way support the claim that the prosecutor had knowledge that the testimony was false. In support of the latter question, Petitioner relies entirely on facts known to him at the time of trial. Further, as I have discussed, even if the new evidence is relevant to his claim of prosecutorial misconduct, Petitioner was not entitled to wait to raise his claim until he had every available scrap of evidence. *Redmond*, 295 F. Supp. 2d at 772 (citing *Tate*, 177 F. Supp. 2d at 800, and *Flanagan*, 154 F.3d at 198-99.)

Finally, Petitioner has made no attempt to demonstrate due diligence in the discovery of Harris's evidence. As the state court held, Petitioner knew Harris, and he has provided no reason for his failure to discover Harris's evidence. Moreover, Petitioner has failed entirely to allege the

date on which Harris told him about Rice's comment.  He therefore has failed to meet his burden to show due diligence.

For all these reasons, Petitioner has failed to demonstrate that he is entitled to calculate the statute of limitations under § 2244(d)(1)(D).

The Supreme Court has directed the District Court to give fair notice and an adequate opportunity to be heard before dismissal of a petition on statute of limitations grounds.  *See Day,* 547 U.S. at 210.  This report and recommendation shall therefore serve as notice that the District Court may dismiss Petitioner's application for habeas corpus relief as time-barred.  The opportunity to file objections to this report and recommendation constitutes Petitioner's opportunity to be heard by the District Judge.

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied because it is barred by the one-year statute of limitations.  I further recommend that a certificate of appealability be denied.  *See Slack v. McDaniel*, 529 U.S. 473 (2000).


Date:  July 31, 2015                              /s/ Ellen S. Carmody
                                                  ELLEN S. CARMODY
                                                  United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).